1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

HAAS AUTOMATION, INC.,

       Plaintiff,

    vs.

BRIAN DENNY, an individual, ASI MACHINE AND SUPPLY, an unknown entity, CNCPROS.NET, Inc., an Idaho Corporation, and AUTOMATED SOLUTIONS, INC., an Idaho Corporation, CNCListings, LLC, an Idaho Corporation, FHD INTERNATIONAL, LLC, an Idaho limited liability company and DOES 1-10, inclusive.

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:12-CV-04779 (CBM)(PLAx)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court hereby issues its Findings of Fact and Conclusions of Law in this matter pursuant to Federal Rule of Civil Procedure 52(a) following a trial on the briefs with supporting evidence.  (Docket No. 158.)  The Court has determined that there is no need to elicit testimony from witnesses and the trial date in this matter is the date of this Order.

The Court finds that Plaintiff has not proved a violation of the Copyright Act and dismisses Plaintiff's Second Cause of Action with prejudice.  The Court finds that Defendants are alter egos of one another.  The Court grants Plaintiff's request for a permanent injunction based on Plaintiff's Fourth Cause of Action, a

1 violation of the California Unfair Competition Law.  The Court issues
2 contemporaneously with the present Findings of Fact and Conclusions of Law a
3 permanent injunction and a separate judgment.

## I.      JURISDICTION

This Court has jurisdiction over this matter under 15 U.S.C. § 1121(a) and
28 U.S.C §§ 1331, 1338(a), and 1367.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is about disputed internet domain names.  Plaintiff Haas
Automation, Inc. ("Plaintiff") is a manufacturer of computer numerically
controlled ("CNC") machines and tools.  (Docket No. 41, Second Amended
Complaint ("SAC") at ¶ 18.)  There are five defendants: Brian Denny ("Denny"),
Automated Solutions, Inc. ("ASI"), CNCPros.net, Inc. ("CNCPros"),
CNCListings, LLC ("CNCListings"), and FHD International, LLC ("FHD")
(collectively "Defendants").

### A.      The 2009 Litigation

The dispute between the parties began in 2009 when Plaintiff filed a lawsuit
(the "2009 Litigation") alleging that Defendant Denny and other defendants
violated the Anticybersquatting Consumer Protection Act (the "ACPA") by
registering domain names that used the word "Haas," which is similar to the name
of Plaintiff's business, Haas Automation, Inc., and several registered trademarks
owned by Plaintiff.  (Case No. CV-09-8336, Docket No. 21 at ¶¶ 12-15, 24, 36-
45.)  The 2009 Litigation went to a jury trial in April 2011.  (Case No. CV-09-
8336, Docket Nos. 101, 102, 103, 104, 109.)  On October 17, 2011, the Court
entered judgment after the jury found that Defendants had registered five domain
names in violation of the ACPA.  (Case No. CV-09-8336, Docket No. 124.)

## B.     The Present Litigation

The present litigation concerns 23 internet domain names that Plaintiff alleges infringe on Plaintiff's marks in violation of the ACPA.  These 23 were not at issue in the 2009 Litigation.  However, 22 of the 23 were discovered during the pendency of the 2009 Litigation.  Plaintiff discovered the 23rd allegedly infringing domain name several months after the trial in the 2009 Litigation.  Like the domain names in the 2009 Litigation, the 23 allegedly infringing domain names in the present matter all contain the word "haas" plus some other terms—*e.g.*, allhaas.com, haashelp.com, haasplus.com, all-haas.com.

The present litigation also involves allegations of copyright infringement (Defendants allegedly use Plaintiff's photos on Defendants' sites) and false designation of origin under the federal trademark statute (Defendants allegedly sell "fake Haas parts" on their sites).  Plaintiff's present lawsuit includes the following causes of action:

- Violation of the ACPA

- Infringement under the Copyright Act

- False designation of origin under the Lanham Act

- Unfair business practices under California Business and Professions Code § 17200

- False advertising under California Business and Professions Code § 17500

The parties filed Motions for Summary Judgment and Partial Summary Judgment in July 2013.  (Docket Nos. 50, 51, 52, 53, 54, 55.)  The Court granted in part and denied in part on December 4, 2013.  (Docket No. 150 (the "MSJ Order").)  The Court found that certain Defendants violated the ACPA as a matter of law and awarded Plaintiff statutory damages of $755,000.  The Court's MSJ

Order left five issues unresolved:

- whether Defendants are alter egos of one another;

- Plaintiff's copyright cause of action;

- Plaintiff's false designation of origin cause of action;

- Plaintiff's unfair competition cause of action; and

- Plaintiff's false advertising cause of action.

(MSJ Order at 25:7-20; 26:1-4.)  Following the Court's MSJ Order, Plaintiff dismissed several of its causes of action.  (*See* Jan. 10, 2014 Order.)  The only cause of action that has not been resolved with respect to liability is Plaintiff's copyright cause of action.  Plaintiff currently seeks only injunctive relief and does not request damages in addition to the statutory damages the Court has already awarded.  Pursuant to the parties' January 8, 2014 stipulation, the Court vacated the request for jury trial in this case and held a bench trial based on the trial briefs and supporting evidence.  (Docket Nos. 156, 157, 158, 172, 173)

## III.  DISCUSSION

### A.    Copyright

Plaintiff alleges that a website run by Defendants, all-haas.com, infringes on Plaintiff's copyrighted photographs of Haas machines.  To establish a claim for copyright infringement, Plaintiff must prove: (1) ownership of copyrighted photographs of its machines and (2) Defendants copied an expression protected by Plaintiff's copyrights.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).

Not only does Plaintiff not seek damages for its copyright infringement claim, it does not discuss its copyright claim in its Trial Brief or identify evidence of infringement for the Court.  The Court finds that Plaintiff has not proved that

Defendants have infringed Plaintiff's copyrighted photographs.

### B.   Alter Ego

Normally, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers, or directors.  *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1106 (2013).  However, under the alter ego doctrine, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation (called "piercing the corporate veil").  *Id.*  The corporate form is disregarded when the entity is used by individuals or another entity to perpetrate fraud, circumvent a statute, or some other wrongful or inequitable purpose.  *Id.* at 1106-07.

Applying the alter ego doctrine requires that Plaintiff prove (1) "that there be such unity of interest and ownership that the separate personalities" of the five Defendants no longer exist, and (2) if the Court does not pierce the corporate veil, "an inequitable result will follow."  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).

### 1.   Evidence re the Alter Ego Doctrine

Courts consider numerous factors when determining whether to apply the alter ego doctrine.  *See id.* at 838-40.  The Court may consider factors recognized by California courts, as well as "any other circumstances which would . . . warrant[] the trier of fact to disregard the corporate entity."  *Id.* at 840.  "[A]pplication of the alter ego doctrine is not made to depend upon prior decisions involving factual situations which appear to be similar.  It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case."  *Toho-Towa Co.*, 217 Cal. App. 4th at 1108 (citation and quotation marks omitted).  The parties have presented evidence on

several factors relevant to application of the alter ego doctrine.

### a)     *Ownership and Control of the Entity Defendants*

The following factors, all relating to ownership and control of business entities, are relevant to whether the alter ego doctrine should be applied:

- "the identical equitable ownership in the two entities;"
- "the identification of the equitable owners thereof with the domination and control of the two entities;"
- "identification of the directors and officers of the two entities in the responsible supervision and management;" and
- "sole ownership of all of the stock in a corporation by one individual or the members of a family."

*Associated Vendors*, 210 Cal. App. 2d at 839.

Plaintiff's evidence shows that Defendant Denny owns the four entity Defendants in this case, ASI, CNCPros, FHD, and CNCListings.  (Pl.'s Appendix of Evidence ("App.") Exh. 9 at 12:13-24; 31:6-10; 44:19-23; 46:18-23.)  Jamie Crabtree, who does accounting work for all four entity Defendants, testified that Defendant Denny makes all decisions and controls the four entity Defendants. (App. Exh. 19 at 53:9-55:2.)

Defendants' evidence also shows that Denny controls the four entity Defendants, either directly because he is the president or managing member of the entity, or indirectly because the entity is controlled by another entity that Defendant Denny controls.  (Feb. 24, 2014 Declaration of Brian Denny ("Denny Decl.") ¶¶ 3 (Denny is the president of Defendant ASI), 11 (Denny is the president of Defendant CNCPros), 23 (Defendant ASI is the managing member of Defendant CNCListings), 42 (Denny is the managing member of Defendant FHD).)  Other evidence provided by Defendants shows that Defendant Denny has held all corporate officer positions for Defendants ASI and CNCPros.  (*See* Denny

Decl., Exh. B. at DEF000050, DEF000003-06, DEF000014; Exh. F. at
DEF000011, DEF000021, DEF000031, DEF000038.)  While neither side has
presented evidence relating to officer positions at the other two entity Defendants,
FHD and CNCListings, Defendants' evidence shows that Defendant ASI (whose
President is Defendant Denny) is the managing member of Defendant
CNCListings, and that Defendant Denny is the managing member of Defendant
FHD.

### b)   *Failure to Maintain Minutes or Adequate Corporate Records*

"[T]he failure to maintain minutes or adequate corporate records" is
relevant to whether the alter ego doctrine should be applied.  *Associated Vendors*,
210 Cal. App. 2d at 838.  Defendant Denny testified that the ASI board of
directors had meetings every year from 1999 to 2013.  (App. Exh. 9 at 14:18-25.)
In connection with this trial, Defendant Denny provided the Court "true and
correct copies of the corporate minutes of [Defendant] ASI from 1999-2012."
(Denny Decl. ¶ 6.)  However, Defendants provided minutes for a Defendant ASI
Board of Directors meeting on September 30, 1999 (the same day that ASI was
incorporated), and then no minutes for a single board meeting or shareholder
meeting for ten years until September 30, 2009, at which point Defendant ASI
provided minutes for annual board meetings from 2009 through 2012.  (*See* Denny
Decl., Exh. B.)

Defendant CNCPros' Articles of Incorporation states that the corporation
will have an "annual meeting" every year.  (*See* Denny Decl., Exh. E.)  Defendant
Denny has provided the Court "true and correct copies of the corporate minutes of
[Defendant] CNCPros from 1999-2012."  (Denny Decl. ¶ 14.)  However,
Defendants' own evidence shows that from 1999 to April 10, 2009, there was not
a single meeting of Defendant CNCPros' shareholders or board.  (Denny Decl.,

Exh. F at DEF000009.)  In sum, the evidence presented shows that Defendants ASI and CNCPros have failed to maintain adequate minutes of their corporate meetings.

### c)   *Use of Same Office or Business Location*

"[T]he use of the same office or business location" is relevant to determining if the alter ego doctrine should be applied.  *Associated Vendors*, 210 Cal. App. 2d at 838.  Plaintiff's evidence shows that all four entity Defendants use the same address.  (App. Exh. 9 at 62:4-9; *see also* Denny Decl., Exhs. F, B, I, M (all indicating all Defendants have used 1582 E. Bramble Lane, Meridian, Idaho 83642 as a business address or location).

### d)   *Employment of the Same Employees and Attorney*

"[T]he employment of the same employees and/or attorney" is relevant to determining if the alter ego doctrine should be applied.  *Associated Vendors*, 210 Cal. App. 2d at 839.  Defendant Denny and the four entity Defendants are all represented by the same counsel, who often files joint motions and briefs for the various Defendants.  And, even when they file separate motions, their briefs overlap substantially and/or contain arguments that are nearly word-for-word identical.  (*Compare, e.g.*, Docket Nos. 50, 51, 52, 53, 54.)  Plaintiff's evidence also shows that the entity Defendants use at least two of the same employees: Defendant Denny and Mr. Crabtree. (*See* App. Exh. 19 at 45:14-19; 53:9-55:2.)

### e)   *Other Factors*

The California Court of Appeal has recognized that the following factors are relevant to whether the alter ego doctrine should be applied:

- "undercapitalization;"
- "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another

corporation;" and

- "the failure to maintain arm's length relationships among related entities."

*Associated Vendors*, 210 Cal. App. 2d at 838.

Plaintiff's evidence shows that although the four entity Defendants keep separate bank accounts, one entity, Defendant CNCPros, keeps approximately $100,000 in its bank account while the other three entity Defendants keep only $500-$2,000 in each of their bank accounts. (App. Exh. 19 at 25:19-26:10; 34:17-35:6; 42:24-43:3.) Defendant CNCPros pays Defendant ASI's single employee's salary, in addition to paying all of CNCPros' employees' salaries, including Defendant Denny. (*Id.* at 16:4-19; 19:24-20:18.) Defendants CNCListings and FHD are single member limited liability companies whose tax information is filed as part of Defendant Denny's personal tax return. (App. Exh. 18 at 24:7-17.) Mr. Crabtree testified that Defendant ASI pays rent to Defendant CNCPros, but also testified that cash never actually transfers from ASI to CNCPros for rent. (*Id.* at 26:15-27:1.) Defendant Denny declares that Defendant FHD has a $300,000 line of credit with a bank and Defendants FHD and CNCListings are capable of satisfying outstanding awards of $100,000 against each of them due under the Court's December 4, 2013 MSJ Order. (Denny Decl. ¶¶ 41, 45, Exh. O.)

Plaintiff's evidence shows that Defendant CNCPros lends money to the other three entity Defendants on a regular basis. (*See* App. Exh. 19 at 32:8-21.) Mr. Crabtree testified that it is "very common" for Defendant CNCPros to loan money to Defendant ASI (but not the other way around). (*Id.* at 24:18-25:18.) In response, Defendant Denny declares that Defendants CNCListings, ASI, and FHD take loans out from Defendant CNCPros "pursuant to contract, and repayment is expected," but Defendants provide no copies of these purported contracts. (Denny Decl. ¶ 16.) The evidence presented shows that Defendant CNCPros lent Defendant FHD $71,945.28 in 2012 even though FHD only keeps approximately

$800-$1,000 in its bank account and had yet to repay CNCPros as of February 2014.  (Denny Decl. ¶ 16, Exh. H; App. Exh. 19 at 34:17-35:6.)

The Court gives no weight to Defendant Denny's statement that the loans between Defendant CNCPros and the other three entity Defendants are pursuant to contract because Defendants do not provide supporting documents, such as the purported contracts between the entity Defendants, which the Court would expect Defendants to provide.  (Denny Decl. ¶ 16.)  The Court gives little weight to Defendant Denny's statement that Defendants FHD and CNCListings are capable of satisfying the Court's awards of statutory damages against them because Plaintiff's unrebutted evidence shows that these Defendants keep amounts of money in their bank account that are far less than the damages imposed.  (Denny Decl. ¶¶ 41, 45; App. Exh. 19 at 25:19-26:10; 34:17-35:6; 42:24-43:3.)

Based on the evidence presented by both sides, the Court finds that (1) Defendants ASI, CNCListings, and FHD are undercapitalized; (2) the entity Defendants do not maintain arm's length relationships; (3) Defendants CNCListings, FHD, and ASI are "conduits" of Defendant CNCPros.  *Associated Vendors*, 210 Cal. App. 2d at 838.

## 2.    Unity of Interest

The first requirement for application of the alter ego doctrine is that the evidence must show that there is "such unity of interest and ownership that the separate personalities" of the five Defendants no longer exist.  *Associated Vendors, Inc.*, 210 Cal. App. 2d at 837.  Based on the evidence presented by the parties discussed above, the Court finds there is "such unity of interest and ownership that the separate personalities" of the four entity Defendants and Defendant Denny no longer exist.  *Id.*

### 3.    Inequitable Result

The second requirement for applying the alter ego doctrine is that "an inequitable result will follow" if the Court does not pierce the corporate veil. *Id.* The Court finds that this requirement is established because the evidence shows that Defendant Denny will use the entity Defendants' limited liability status to shield himself from paying judgments that may be awarded for future ACPA violations, as well as those that the Court has already imposed against Defendants FHD and CNCListings.  Two of the entity Defendants have already acted in bad faith when registering domain names in violation of the ACPA.  (*See* MSJ Order at 12:12-13.)   Furthermore, Defendant Denny has registered numerous domain names containing Plaintiff's Haas mark.  His conduct throughout this lawsuit and the 2009 Litigation demonstrates that he is unwilling to stop using Plaintiff's mark.  Of particular note is the fact that Defendant Denny continued to use and register domain names containing the Haas mark even after the jury found him liable for ACPA violations in the 2009 Litigation.  If the corporate veil is not pierced, then the evidence of Defendant Denny's bad faith suggests that Defendants CNCListings and FHD—which have almost no funds and which Denny controls and owns—will not pay for their ACPA violations and Denny will continue violating Plaintiff's intellectual property rights with his business entities.

### C.    Single Business Enterprise

The "single business enterprise" theory is an alternative theory used to establish that the requirements for the alter ego doctrine are met.  *Toho-Towa Co.*, 217 Cal. App. 4th at 1108-09.  Under the single business enterprise theory, "[a] court may also disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation."  *Id.* at 1107.

Here, the evidence presented by the parties discussed above shows that the entity Defendants are a single business enterprise because Defendants CNCListings, FHD, and ASI are so organized and controlled by Defendant CNCPros as to make them merely conduits of CNCPros.

In sum, the Court finds that Defendant Denny and the four entity Defendants are all alter egos of one another and that the four entity Defendants constitute a single business enterprise.

### D.    Permanent Injunction

Plaintiff seeks a permanent injunction on two bases: (1) Defendants' violations of the ACPA, a federal statute, and (2) Defendants' violations of the UCL, a California statute.

The federal Lanham Act—of which the ACPA is a part—authorizes permanent injunctions to prevent future violations of the ACPA.  15 U.S.C. § 1116(a).  To obtain a permanent injunction for a violation of the federal Lanham Act,

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).

The California UCL empowers the Court to enjoin uncompetitive acts, as well as to "make such orders or judgments . . . as may be necessary to prevent the use or employment of any practice which constitutes unfair competition."  Cal. Bus. & Prof. Code § 17203.  To obtain a permanent injunction under California law, "the plaintiff must prove (1) the elements of a cause of action involving the

wrongful act sought to be enjoined and (2) the grounds for equitable relief, such as, inadequacy of the remedy at law." *City of S. Pasadena v. Dep't of Transp.*, 29 Cal. App. 4th 1280, 1293 (1994) (citation omitted).

Courts have granted permanent injunctions for violations of the ACPA. *See, e.g.*, *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1113-14 (S.D. Cal. 2012); *Flow Control Indus. Inc. v. AMHI Inc.*, 278 F. Supp. 2d 1193, 1201-02 (W.D. Wash. 2003). Courts have also granted permanent injunctions for violations of the UCL. *See, e.g.*, *Shah*, 850 F. Supp. 2d at 1113-14 (granting injunction on both ACPA and UCL grounds); *cf. Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012). As discussed below, the Court grants Plaintiff an injunction based on Defendants' violation of the California UCL.

## 1.    Injunction under Federal Law

The Court cannot issue an injunction based solely on the Lanham Act because Plaintiff has failed to show that it suffered irreparable injury. Plaintiff appears to argue that it suffered an irreparable injury for three reasons: (1) Defendants have caused "confusion, mistake, and deception as to the authenticity of Haas' products and services;" (2) irreparable injury can be presumed because Plaintiff has established a likelihood of confusion; and (3) Defendants have damaged Plaintiff's goodwill. (Pl.'s Trial Brief at 10:13-15; 10:23-11:1.) However, Plaintiff's evidence does not support a finding of irreparable harm.

### a)    *Confusion, Mistake, and Deception*

Plaintiff asserts that Defendants have sold "fake Haas parts on the internet," which has caused "confusion, mistake, and deception as to the authenticity of Haas' products and services." (*Id.* at 10:8, 10:13-15.) It appears Plaintiff's argument is that Defendants' sale of "fake Haas parts" constitutes irreparable injury. Plaintiff's evidence of "fake Haas parts" consists of (1) the declaration of

1    Scott Melamed, Plaintiff's Director of International Marketing, and (2) the

2    testimony of Defendant Denny.  (*See id.* at 6:3-14.)  Relying on a vague citation to

3    Defendant Denny's testimony, Mr. Melamed states in conclusory fashion that

> Defendants used haasplus.com to sell fake replacement parts for Haas
> machines which they (1) advertised as being real Haas parts; (2)
> identified by using the real Haas part numbers which are used to
> identify authentic Haas parts; and (3) shipped a package which
> displayed the word "Haas" on it, although the entity selling the fake
> parts was actually FHD.

9    (Feb. 10, 2014 Declaration of Scott Melamed ("Melamed Decl.") ¶ 22.)

10           Rather than point the Court to specific parts of Defendant Denny's

11   testimony, Plaintiff has cited to two exhibits containing more than 90 pages of

12   testimony, leaving the Court to guess as to which parts may support Plaintiff's

13   argument.  (*See id.*; App. Exhs. 9, 10.)  Plaintiff's evidence does not support the

14   conclusion that Defendants sell "fake Haas parts."  First, Plaintiff does not

15   articulate what the term "fake Haas parts" means.  Second, the most that the

16   testimony proves is that a customer cannot tell who made some of the parts sold

17   on one of Defendants' sites, HaasPlus.com.  (*See, e.g.*, App. Exh. 9 at 42:1-21;

18   112:10-16.)  The Court finds that Plaintiff's evidence does not show that Plaintiff

19   has suffered irreparable harm.

### b)    *Presumption of Irreparable Injury*

22           Plaintiff argues that "when a plaintiff establishes a likelihood of confusion,

23   it is presumed that irreparable harm will occur if injunctive relief is not granted,"

24   relying on *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir.

25   1989).  (Pl.'s Trial Brief at 10:24-26.)  This is not persuasive.  *Vision Sports, Inc.*

26   and the case on which it relied, *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d

27   1215, 1220 (9th Cir. 1987), were overruled by the Supreme Court in the *eBay*

28   decision.  *See eBay*, 547 U.S. at 393; *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d

14

976, 979 (9th Cir. 2011).  Indeed, the Ninth Circuit recently explained that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action" under the Lanham Act.  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

### c)    *Damage to Plaintiff's Goodwill*

Damage to goodwill can constitute irreparable harm.  *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm.").  However, Plaintiff has provided no evidence relating to its goodwill or any damages that its goodwill has suffered.

In sum, Plaintiff has offered no evidence—such as lost profits or lost goodwill—to show that it has suffered irreparable harm.  Accordingly, an injunction based on the Lanham Act is not appropriate.[1]

### 2.    Injunction Under California Law

The standard for an injunction under California law differs from the federal standard.  In California, "the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined and (2) the grounds for equitable relief, such as, inadequacy of the remedy at law."  *City of S. Pasadena*, 29 Cal. App. 4th at 1293.  Here, the evidence shows that an injunction under California law is warranted.

### a)    *Elements of Cause of Action Involving the Wrongful Act Sought to Be Enjoined*

Plaintiff has already proven "the elements of a cause of action involving the

---

[1] Because Plaintiff failed to show irreparable harm, the Court need not reach Defendants' remaining arguments relating to an injunction under federal law, including: (1) Defendants' use of the Plaintiff's mark is nominative fair use under federal trademark law; (2) Plaintiff has not demonstrated an inadequate legal remedy; (3) the equities do not balance in Plaintiff's favor; and (4) the public would not be served by an injunction.

wrongful act sought to be enjoined." *Id.* The Court granted Plaintiff's Motion for Partial Summary Judgment with respect to Plaintiff's ACPA cause of action and Plaintiff's UCL cause of action, stating that:

> The UCL's prohibition on "unlawful" business practices "borrows violations of other laws and treats them as unlawful practices that [the UCL] makes independently actionable." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 520 (2013) (citation and quotation omitted). . . . Plaintiff has established as a matter of law that Defendants violated the ACPA. An ACPA violation is independently actionable under the UCL. *See id.* Accordingly, the Court finds that Defendants' violations of the ACPA constitute violations of the UCL.

(MSJ Order at 21:14-21.)

### b)   *Grounds for Equitable Relief*

The UCL empowers a court to issue injunctions for violations of the UCL. Cal. Bus. & Prof. Code § 17203. "A trial court has very broad discretion in formulating equitable relief in unfair competition law actions." *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1277 (2007) (citation and quotation marks omitted). "[A] showing of threatened future harm or continuing violation is required" before a court can impose an injunction under the UCL. *People v. Toomey*, 157 Cal. App. 3d 1, 20 (1984).

Here, there are grounds for equitable relief and evidence of a "threatened future harm" because there is a risk that Defendants may violate the ACPA again. *Id.* Defendants' conduct demonstrates that they do not plan to stop registering domain names that are similar to Plaintiff's mark. Defendant CNCListings registered haasplus.com, one of the 23 domain names at issue in the present case, on April 8, 2011, just days before the trial began in the 2009 Litigation on April 12, 2011. (*See* App. Exh. 3 ¶ 25.) Defendant CNCListings registered all-haas.com on September 19, 2011, just a few months after the jury verdict. (*See id.*

16

at ¶ 27.)  Importantly,

> Both of these were done after the Court had already ruled that all the domain names at issue in the 2009 Litigation were confusingly similar as a matter of law on March 11, 2011.  (Case No. 09-CV-8336, Docket No. 78.)  Moreover, Defendants were aware since November 2009 when the prior litigation began that they were being sued [for registering] domain names that were similar to the 23 Allegedly Infringing Domain Names in the present case, which all contain the word "haas" plus some other terms.

(MSJ Order at 9:6-12.)  In the present litigation, the Court ruled on December 4, 2013 that the 23 domain names at issue in the present case violate the ACPA as a matter of law.  (*Id.* at 23:23-25.)  Yet during the pendency of the instant case, Plaintiff has filed third and fourth lawsuits against Defendants; the third alleges violations of the ACPA related to 17 more domain names containing the word "Haas" and the fourth alleges trademark and unfair competition claims based on Defendants' activity on the internet.  (Case No. CV 14-84 Docket No. 1; Case No. CV 14-434 Docket No. 1.)

Defendant Denny states that he does not intend to violate the ACPA again, declaring, "At no time did I have or demonstrate any intent, individually or on behalf of any of the Defendants, to defy the Summary Judgment Order or continue using the domains that the Court found to be in violation of the ACPA."  (Denny Decl. ¶ 38.)  He also declares,

> Since the filing of the Complaint [in the instant case], neither I, nor any entity that I am affiliated with, have registered any domain name with the word "haas" in it.  I, including any entity that I am affiliated with, will never again register any domain name with the word "haas" in it.

(*Id.* at ¶¶ 61-62.)

The Court finds that Defendant Denny is not credible.  Defendant Denny testified during trial in the 2009 Litigation as follows:

Q.   Do you intend to continue registering domain names that incorporate the term Haas?

A.   As I sit here today, I don't have those intentions, no.

(App. Exh. 5 at 108:22-24.)  Yet just a few months later, Defendant CNCListings (which Denny controls) registered all-haas.com.  (App. Exh. 3 ¶ 27.)  Based on Defendants' conduct in the instant case and the previous litigation, it is reasonable to find that Defendants will continue using domain names including the word "Haas."  Accordingly, Plaintiff has "proven the grounds for equitable relief" by presenting a "showing of threatened future harm or continuing violation." *City of S. Pasadena*, 29 Cal. App. 4th at 1293; *Toomey*, 157 Cal. App. 3d at 20.   The Court therefore grants a permanent injunction based on the UCL.

## IV.   CONCLUSION

The Court dismisses with prejudice Plaintiff's Second Cause of Action for copyright infringement.

The Court finds that Defendants are alter egos of one another.

The Court grants Plaintiff's request for a permanent injunction based on Plaintiff's Fourth Cause of Action.  The Court issues contemporaneously with the present Order a separate order regarding the permanent injunction and a separate judgment.

**IT IS SO ORDERED.**

DATED:  July 1,  2014

_____
Honorable Consuelo B. Marshall
United States District Judge

18